**Robert E. STEFFEY, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, and Ward North America, Inc., formerly known as Scott Wetzel Services, Inc., Appellees.**

No. S–8929.

Supreme Court of Alaska.

April 28, 2000.

---

Charles W. Coe and Robert B. Mason, Law Office of Charles W. Coe, Anchorage, for Appellant.

Trena L. Heikes, Law Office of Trena L. Heikes, Anchorage, for Appellees.

Before EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

### I. INTRODUCTION

Robert Steffey suffered two work-related injuries in 1992 and received chiropractic care regularly until 1995, at which point his employer controverted his claims. Steffey filed numerous reports of injury complaining that work had aggravated his condition. Because the employer presented substantial evidence that work did not aggravate Steffey's symptoms, we affirm the Board's decision denying Steffey benefits.

### II. FACTS AND PROCEEDINGS

The Municipality of Anchorage has employed Robert Steffey as a Refuse Disposal Utility III worker since 1988. The job requires him to drive a garbage truck and trailer between the refuse transfer station in South Anchorage and the Eagle River landfill.

Steffey suffered a work-related injury on February 20, 1992, damaging his right shoulder and lower back while wrenching some garbage free from his truck's trailer. Steffey missed two months of work. Upon his return he complained that sitting in his truck seat aggravated his injury because it offered him no lumbar support. Soon after he returned to work, Steffey suffered a second work-related injury on June 6, 1992 and again stopped working. He returned to work in October 1992, and the Municipality installed a new seat in his truck. Nevertheless, Steffey continued to complain that driving aggravated his injury.

Steffey sought palliative chiropractic care from Dr. James Martin, who treated Steffey for four and one-half years. The Municipality paid for all of Steffey's chiropractic care until April 1995. The Municipality's obligation to pay for Steffey's chiropractic care is governed by the following regulation:

> [T]he standards for payment for frequency of outpatient treatment for the injury will be as follows ... payment for a course of treatment for the injury may not exceed more than three treatments per week for the first month, two treatments per week for the second and third months, one treatment per week for the fourth and fifth months, and one treatment per month for the sixth through twelfth months.[1]

1. 8 Alaska Administrative Code (AAC) 45.082(f) (1999).

The Municipality paid for chiropractic treatments that were more frequent than the guidelines permit until April 1995, when it controverted his claims.

Steffey sought continued chiropractic treatment for the aggravation of his old injury at an Alaska Workers' Compensation Board hearing in May 1995. He wanted to receive the care without having to file either a plan for continuing and multiple treatments as required by AS 23.30.095[2] or additional claims of injury. The Board rejected Steffey's request for continued chiropractic care because it did not comply with the requirements of AS 23.30.095. The Board also required Steffey to file new reports of injury if he wanted his treatments to continue. Steffey did not appeal the Board's decision.

After the Board's decision, Steffey began filing numerous Reports of Occupational Injury. He filed eight reports in eight months for injuries dating back to March 1994. Specifically, Steffey reported two injuries that roughly correspond with the days of his chiropractor visits in the spring of 1995. Late that summer he reported additional injuries that occurred on August 1, 1995 and August 22, 1995. In February 1996 Steffey reported four more injuries that all dated back to 1994.[3] Whether the eight reported injuries were work related was the primary issue at the Board hearing that is the subject of this appeal.

After filing the four injury claims during the summer of 1995, Steffey continued to work until September 6, when his chiropractor recommended that he stop working. He did not return to work until November, missing two and one-half months. During Steffey's work hiatus, he received treatment from Dr. Martin and, at the Municipality's request, was examined by Dr. Bryan Laycoe, a certified orthopedic surgeon, and Dr. Scott Fechtel, a chiropractor and resident in medical neurology. Dr. Fechtel had examined Steffey in October of 1992 in conjunction with his original work-related injuries. Dr. Laycoe and Dr. Fechtel concluded that Steffey's recent complaints did not arise from new work-related aggravation of his injuries. The report from Dr. Morris Horning's exam of Steffey, performed a year earlier, also reached this conclusion. Based on these results, the Municipality controverted Steffey's claim for benefits for the August 22, 1995 alleged injury.

Steffey has claimed a work-related aggravation of his 1992 injuries and attributes an increase in symptoms to the seat of the truck that his job required him to drive. All of the injury reports filed after the May 1995 hearing cite his truck and its seat as the cause of his injuries. Steffey repeatedly demanded new equipment, and the Municipality eventually complied with his request in October 1995 and issued him a new truck with an air-cushioned adjustable seat. Since he has received the new truck, Steffey claims that he has not sought further chiropractic care for lower back pain.

In the fall of 1996, the Board held a hearing on the issue of whether Steffey suffered a compensable injury on any or all of the eight occasions for which he filed a report. The

2. AS 23.30.095 provides:

 (a) The employer shall furnish medical, surgical, and other attendance or treatment, nurse and hospital service ... for the period which the nature of the injury or the process of recovery requires, not exceeding two years from and after the date of injury to the employee.... [I]f continued treatment or care or both beyond the two-year period is indicated, the injured employee has the right of review by the board.

 ....

 (c) ... When a claim is made for a course of treatment requiring continuing and multiple treatments of a similar nature, ... the physician or health care provider shall furnish a written treatment plan if the course of treatment will require more frequent outpatient visits than the standard treatment frequency for the nature and degree of the injury and the type of treatments. The treatment plan shall be furnished to the employee and the employer within 14 days after treatment begins. The treatment plan must include objectives, modalities, frequency of treatments, and reasons for the frequency of treatments. If the treatment plan is not furnished as required under this subsection, neither the employer nor the employee may be required to pay for treatments that exceed the frequency standard [as prescribed by 8 AAC 45.082(f)].

3. Although AS 23.30.100 requires injury reports to be made within 30 days of the injury, the timeliness of the filing of injury reports is not presented on appeal.

Board heard testimony from Steffey, several doctors who had treated and examined him, and Steffey's supervisors. The Board concluded that Steffey had not suffered a compensable injury on any of the eight occasions.

The Board relied heavily on the reports and testimony of Dr. Laycoe and Dr. Fechtel. The Board found that objective medical evidence substantiated the doctors' conclusions that Steffey had not suffered new work-related injuries, that further chiropractic care should be curbed, and that Steffey's condition was stable.

In reaching those conclusions, the Board discounted the value of Dr. Martin's testimony. Dr. Martin testified that Steffey had suffered a series of new injuries which had aggravated and worsened his pre-existing condition. The Board remarked in its findings, however, that with only one exception—the August 22, 1995 alleged injury—Dr. Martin's records continued to list the date of Steffey's injury as 1992. The Board emphasized the failure of Steffey's own treating chiropractor to record any "new" injuries that may have combined with Steffey's preexisting infirmity to bring about an aggravation.

In concluding that Steffey had not suffered a new injury on August 22, 1995, the Board found Steffey's conduct to be inconsistent with that of someone who would subsequently miss two and one-half months of work. The Board heard substantial testimony that Steffey was an avid golfer. Dr. Laycoe testified that golfing puts a great deal of strain on the lower back, and Steffey conceded to Dr. Horning that golf increased his pain. Steffey later testified at the hearing:

Q: ... Swinging the club made your back pain worse?

A: That's right. Yes.

After learning that Steffey played thirteen holes of golf within a week of the August 22 injury, the Board doubted the veracity of Steffey's claims. The Board also noted that Steffey waited a week after the injury before seeking treatment from Dr. Martin and that Steffey continued to work for two and one-half weeks after his job ostensibly aggravated the injury.

Accordingly, the Board found that Steffey had not suffered a compensable injury in 1994 or 1995. The Board concluded that Steffey's treatment for his February 20, 1992 and June 6, 1992 injuries should be governed by the standards prescribed by 8 AAC 45.082(f). Because the parties did not address whether the Municipality had paid for chiropractic care pursuant to those standards, the Board retained jurisdiction to determine how much the Municipality should pay.

Steffey appealed to the superior court. Judge Sigurd E. Murphy affirmed the Board's decision, which Steffey now appeals.

## III. *STANDARD OF REVIEW*

■■ Because the question of whether Steffey suffered a work-related injury in 1994 or 1995 is a question of fact,[4] we apply the substantial evidence test. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] When applying the substantial evidence test this court should not "reweigh the evidence or choose between competing inferences," but simply determine whether such evidence exists.[6] Whether the quantum of evidence is substantial, however, is a legal question.[7]

■■ The question of whether the Board applied the correct legal standard is a question of law to which this court applies its independent judgment.[8] When reviewing the decision of a superior court acting as an intermediate court of appeal, we accord no

---

4. See *Wade v. Anchorage Sch. Dist.*, 741 P.2d 634, 641 (Alaska 1987).

5. *Thompson v. United Parcel Serv.*, 975 P.2d 684, 688 (Alaska 1999) (quoting *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 170 (Alaska 1974)).

6. *Id.*

7. See *Tolbert v. Alascom*, 973 P.2d 603, 607 (Alaska 1999).

8. See *Phillip Weidner & Assocs., Inc. v. Hibdon*, 989 P.2d 727, 730 (Alaska 1999).

weight to the superior court decision.[9]

## IV. DISCUSSION

 Steffey claims that on eight separate occasions he has suffered work-related aggravations of his 1992 injury. The Board was required to decide whether Steffey's employment was a substantial factor in the aggravation of his injuries.[10] Our recent decision in *Tolbert v. Alascom* clarified that the work-related factor need not be the sole factor in causing the disability.[11] "[B]enefits will be awarded where the record establishes that the work-related injury is a substantial factor in the employee's disability regardless of whether a non-work-related injury could independently have caused disability."[12] In addition, "[w]e reject the distinction between worsening of the underlying disease process and worsening of the symptoms of disease."[13]

 In deciding whether work-related factors were a substantial factor in causing an employee's injury, the Board applies the Workers' Compensation Act presumption that an employee's claim is compensable.[14] For the presumption to attach, the employee must first establish a preliminary link between his disability and his employment.[15] When the presumption attaches, the burden shifts to the employer to rebut the presumption.[16] The employer may rebut the pre-

sumption by demonstrating substantial evidence that the injury was not work related.[17] If the employer shows substantial evidence, then the presumption disappears and the employee must prove his claim by a preponderance of the evidence.[18] If the employer fails to meet the burden, then the presumption remains.[19] We will uphold the Board's determination if substantial evidence supports the Board's findings.[20]

### A. The Municipality Presented Substantial Evidence Sufficient to Rebut the Presumption.

 Because the Municipality does not dispute that Steffey triggered the presumption of compensability through Steffey's own testimony and the testimony of Dr. Martin, we begin our analysis by examining whether the Municipality produced substantial evidence that Steffey did not suffer a work-related aggravation of his injury. In order to overcome the presumption of compensability

an employer must present substantial evidence that either (1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the [aggravation or acceleration]; or (2) directly eliminates any reasonable possibility that employment was a

---

**9.** *See Tolbert*, 973 P.2d at 606–07.

**10.** *See Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 532 (Alaska 1987). The question is not whether Steffey suffered a new injury but whether his work worsened his symptoms.

**11.** 973 P.2d at 611–12.

**12.** *Id.* at 612 (internal punctuation omitted).

**13.** *DeYonge v. NANA/Marriott*, 1 P.3d 90, 96 (Alaska 2000) (internal punctuation omitted) (quoting *Hester v. State, Pub. Employees' Retirement Bd.*, 817 P.2d 472, 476 n. 7 (Alaska 1991)) (rejecting the distinction between the worsening of symptoms and the worsening of the underlying disease in the context of workers' compensation cases). Steffey correctly points out, and the Municipality concedes, that the superior court used the wrong standard when it stated, "the work injury must cause more than a mere increase in symptoms." We need not remand on this issue, however, because this court accords

no weight to the superior court acting as the intermediate court of review, and the Board correctly considered whether work was a substantial factor in aggravating Steffey's symptoms.

**14.** *See* AS 23.30.120(a)(1); *Tolbert*, 973 P.2d at 610.

**15.** *See Stephens v. ITT/Felec Servs.*, 915 P.2d 620, 624 (Alaska 1996).

**16.** *See Burgess Constr. Co. v. Smallwood*, 623 P.2d 312, 316 (Alaska 1981).

**17.** *See Tolbert*, 973 P.2d at 611.

**18.** *See Veco, Inc. v. Wolfer*, 693 P.2d 865, 870 (Alaska 1985).

**19.** *See Land & Marine Rental Co. v. Rawls*, 686 P.2d 1187, 1189 (Alaska 1984).

**20.** *See Stephens*, 915 P.2d at 624.

factor in causing the [aggravation or acceleration].[21]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22] And we look simply for the presence of substantial evidence without reweighing it.[23]

■ We conclude that the Municipality presented substantial evidence that work was not a substantial factor in aggravating Steffey's disability. The Board accorded "great weight to Dr[ ]. Laycoe and Dr. Fechtel's opinion[s]." Both doctors examined Steffey in October 1995, and both testified at Steffey's hearing. Dr. Laycoe stated that, "[Dr. Fechtel and I] did not believe that there was a specific work injury in August of 1995." Instead, Dr. Laycoe offered an alternative, non-work-related explanation for Steffey's August 22, 1995 symptoms:

Q: [M]y question is, Doctor, of the activities I've described, driving a truck with an air-cushioned suspension seat between Anchorage and Girdwood and back, versus playing golf a couple days later, which of those activities would you anticipate would more likely than not cause those symptoms he was complaining about or aggravate his condition as he was claiming?

A: Again, this is answerable, basically, by understanding what puts the most force on the back. So if you're trying to assess a change in physical condition, you'd have to [be] most suspicious of the physical activity that put more force on the back, and in that case the golf would put more force on the back.

Dr. Laycoe's alternative explanation for the cause of Steffey's injury was substantiated in part by Steffey's own hearing testimony and his admissions to Dr. Horning. Because the Board had heard evidence that work was not a substantial factor in causing Steffey's symptoms, the Board did not err in concluding that the Municipality had rebutted the presumption of compensability. "It has always been possible to rebut the presumption of compensability by presenting a qualified expert who testifies that, in his or her opinion, the claimant's work was probably not a substantial cause of her disability."[24]

Steffey argues that our recent decision in *Tolbert* requires us to conclude that the Board erred in finding that the Municipality overcame the presumption. In *Tolbert* we concluded that the employer failed to rebut the presumption because the expert testimony did not rule out another expert's diagnosis of an alternative cause of the disability.[25] Steffey argues in this case that the Municipality has not ruled out Dr. Martin's testimony that the truck seat aggravated his injury. But Dr. Laycoe concluded that swinging a golf club was more likely to cause Steffey's symptoms than driving a truck. Because the Municipality's experts provided this alternative explanation for Steffey's symptoms, thus excluding work-related factors as a substantial cause of the aggravation, *Tolbert* does not require us to reverse the Board's conclusion.

### B. *Steffey Did Not Prove His Claim by a Preponderance of the Evidence.*

■ We must next examine the Board's conclusion that Steffey failed to prove that his work was a substantial factor in the aggravation of his injuries. In making this determination, the Board may weigh the evidence presented by both sides.[26] When we examine whether substantial evidence supports the Board's conclusion, we defer to the

---

**21.** *Williams v. State, Dep't of Revenue,* 938 P.2d 1065, 1072 (Alaska 1997) (quoting *Gillispie v. B & B Foodland,* 881 P.2d 1106, 1109 (Alaska 1994) (internal quotations omitted)).

**22.** *Thompson v. United Parcel Serv.,* 975 P.2d 684, 688 (Alaska 1999).

**23.** *See Gillispie,* 881 P.2d at 1109; *Wolfer,* 693 P.2d at 869–70.

**24.** *Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992).

**25.** 973 P.2d at 611.

**26.** *See Stephens,* 915 P.2d at 627 (stating that the evidence "could be weighed only after the Board determined that the presumption had been overcome").

Board's determination of witness credibility.[27]

In concluding that Steffey failed to prove his claim, the Board found that Steffey did not present credible evidence. Steffey presented his own testimony and the testimony of Dr. Martin, his treating chiropractor. The Board discounted the testimony of Dr. Martin and placed more weight upon his written medical records. In his records from June 1992 through August 1, 1995, Dr. Martin listed 1992 as the date of Steffey's injury. The Board reasoned that if Steffey had reported significant injuries after that date, Dr. Martin would have noted it, as he did on August 22, 1995. Because we defer to the Board's determination of witness credibility, we give little weight to Dr. Martin's testimony.

Dr. Martin's reports did indicate that Steffey suffered a new injury on August 22, 1995. Accordingly, the Board gave particular scrutiny to Steffey's claim that he suffered a work-related injury during that week in August 1995. In doing so, the Board relied heavily on the report of Drs. Laycoe and Fechtel, which concluded that the August 22, 1995 alleged injury did not aggravate the 1992 injury.

The Board was skeptical of the veracity of Steffey's claims. The Board found that Steffey's attempt to play golf within a week of the alleged injury, his failure to see Dr. Martin for a week thereafter, and his ability to continue working for two and one-half weeks after August 22 were inconsistent with an aggravation of the significance claimed by Steffey. The Board agreed with the conclusion of Drs. Laycoe and Fechtel and denied Steffey benefits.[28]

We affirm the Board's decision under the deferential substantial evidence standard. Although Steffey points to testimony by Drs. Laycoe and Fechtel indicating that the doctors were not absolutely certain that work was not a substantial factor in Steffey's injury, it is not our role to reweigh the evidence.[29] Because the Board determined that the evidence presented by Steffey was not credible, we conclude that it was reasonable for the Board to find "that the employee did not suffer an aggravation or acceleration of his June 6, 1992 injury, nor did his work combine with the 1992 injury to produce the 1994 and 1995 condition." Because Steffey's symptoms result from his 1992 injuries, and because the Board properly concluded that his job did not aggravate or accelerate those injuries, his employer's obligation to pay for chiropractic treatment should be governed by 8 AAC 45.082(f).

V. CONCLUSION

Because we conclude that substantial evidence supported the Board's finding that Steffey's condition was not work related, we AFFIRM the Board's decision to deny Steffey workers' compensation benefits.

MATTHEWS, Chief Justice, not participating.

---

27. See AS 23.30.122.

28. Steffey argues that the Board erroneously applied the last injurious exposure rule test and required him to show "an objective change to the underlying preexisting condition." Steffey cites *Jones v. Alaska Workmen's Compensation Bd.,* 600 P.2d 738, 740 (Alaska 1979), for the proposition that the Board should have awarded compensation upon a showing of "an increase in symptoms caused by the current employment." But the Board denied benefits on the proper

basis. It addressed Steffey's concern about his work causing his symptoms when it stated, "nor did his work combine with the 1992 injury to produce the 1994 and 1995 condition." The Board concluded that Steffey's work was not a substantial factor in determining the symptoms he experienced in 1994 and 1995, and it appropriately denied him benefits.

29. See *Thompson,* 975 P.2d at 688 (citations omitted).