**Linda BRADBURY, Appellant,**

v.

**CHUGACH ELECTRIC ASSOCIATION and Fremont Insurance Company, Appellees.**

No. S–10532.

Supreme Court of Alaska.

June 20, 2003.

Rehearing Denied July 2, 2003.

---

Michael J. Jensen, Law Offices of Michael J. Jensen, Anchorage, for Appellant.

Patricia L. Zobel and John D. Harjehausen, DeLisio, Moran, Geraghty & Zobel, P.C., Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Linda Bradbury died while working for Chugach Electric Association, Inc. when a cyst in her liver ruptured causing a deadly anaphylactic reaction. Dennis Bradbury, her husband, appeals the Alaska Workers' Compensation Board's denial of benefits related to his wife's death. Because the Board's decision is supported by substantial evidence, we affirm it.

## II. FACTS AND PROCEEDINGS

### A. Factual History

Linda Bradbury died on June 18, 1999, while working as a bull cook for Chugach Electric Association, Inc. in Beluga. According to the autopsy, Bradbury died from anaphylactic shock when a hydatid cyst in her liver ruptured. When the cyst ruptured, its contents spilled into her abdomen and precipitated a massive allergic reaction. Hydatid cysts are parasitic infections. Dr. Franc Fallico, deputy medical examiner for the state, noted on Bradbury's death certificate that during the autopsy he found "[n]o evidence of significant traumatic injury."

Bradbury first experienced abdominal pain, which led to the discovery of her cyst, in early March 1999. She went to the Family Health Center in Palmer because of the pain and returned a few days later for an abdominal ultrasound. Dr. Gerald Phillips, who performed the ultrasound, reported that the test revealed a large cyst in the left lobe of her liver. On March 12, 1999, a practitioner at the Family Health Center noted in Bradbury's records that a surgeon said the cyst was "not a problem" and that he would watch it for any changes.

A few months later, Bradbury began to experience pain in the area of her cyst. In June 1999 she told a nurse practitioner that abdominal pain near her liver cyst had awakened her from sleep. The next day Bradbury went to the Health Center because of the pain. Other than abdominal pain, the nurse practitioner noted that Bradbury's vital signs were stable and advised her to return to the Health Center if she had a fever. Bradbury made an appointment for a CT scan of her abdomen for Wednesday,

June 23, 1999, the day after she would have returned home from her next work shift.

Linda Bradbury had worked for Chugach Electric since April 1997. She worked seven 12–hour days straight followed by seven days off. She flew to Beluga on Wednesday mornings and left on Tuesday nights. On Wednesday, June 16, two days before her death, Bradbury flew to Beluga to begin her week-long work shift.

## B. Procedural History

On February 7, 2000, Dennis Bradbury filed a workers' compensation claim for death benefits and expenses stemming from his wife's death. On February 23, 2000, Chugach Electric challenged his claim as not work-related. The Alaska Workers' Compensation Board heard the claim in September 2000.

### 1. Testimony presented to the Board

The Board first heard testimony from Dennis Bradbury, who noted that his wife complained of stomach pains about two weeks before her death. He testified that he spoke with her after she returned to work on Wednesday, June 16, and that she told him she had not slept well the night before. He described a note his wife had written that Wednesday, which was found among her personal belongings after she died. According to Dennis Bradbury, his wife indicated in the note that she was in so much pain she could not sleep that night. This note was admitted into evidence.

Robert Klemke, the head cook who worked on Linda Bradbury's shift, described to the Board some of Bradbury's duties as a bull cook. The testimony that Klemke and others gave concerning Bradbury's work duties and how she performed them is significant because Dennis Bradbury's theory was that the physical labor his wife performed inflicted trauma upon her abdomen, resulting in the cyst's rupture. Klemke explained that a bull cook is responsible for cold food preparation and basic cleanup. Klemke testified that when Bradbury started work at 5:30 a.m., she first prepared breakfast by putting out fruit and by stocking milk, juice, and water. Klemke added that in addition to breakfast preparation, Bradbury did some general cleaning including washing baking pans that were soaking in the sink. He noted that because of Bradbury's size, five feet two inches, she had to lean over the sink to reach the pans.

Klemke testified that after Bradbury finished in the dining area, she loaded ice, milk, fruit, juice, and water into a truck to drive to the break rooms. She would then stock the break rooms with those items. Klemke testified that he had seen her bump into things occasionally and that he witnessed Bradbury support objects on her hip and abdomen.

In addition to Klemke, Claudia McLean testified in support of Bradbury's claim. McLean worked as a bull cook on the shift opposite Linda Bradbury. Because McLean and Bradbury generally shared the same duties, McLean prepared a list of morning duties Bradbury allegedly would have performed on the morning of her death.

Two doctors, Dr. Gerald Roberts and Dr. David Anaise, testified in support of Bradbury's claim. Dr. Roberts is a gastroenterologist and internist and has never treated a patient with a hydatid cyst. He indicated that "the cause of the rupture was most probably related to the work she was carrying out at her job as a bull cook, particularly in the two hours prior to her death on June 18, 1999." Dr. Roberts based his opinion upon Bradbury's medical records and medical articles about hydatid cysts. He specified that minor trauma, and even leaning over a deep sink, could conceivably cause a cyst to rupture. He expressed the opinion that spontaneous rupture of hydatid cysts is relatively rare and noted that Bradbury did fairly strong physical labor. He concluded that the cyst ruptured because something must have struck Bradbury's abdomen while she was working.

Dr. David Anaise is a retired surgeon who now practices law. He has never treated a patient with a hydatid cyst. He testified that Bradbury's work activities in the two hours before her death would have put enough pressure on her abdomen to rupture the cyst. Dr. Anaise admitted that the only cases of traumatic rupture he had read about in the

medical literature involved a blunt trauma or blow to the abdomen.

Two physicians, Dr. Kenneth Flora and Dr. David Nelson, testified on behalf of Chugach Electric. Dr. Flora is a hepatologist whose subspecialty is the diagnosis and treatment of chronic liver disease. He is also a professor of medicine. In his practice, he has seen approximately ten patients with hydatid cysts. Dr. Flora gave the opinion that the cyst ruptured spontaneously and that Bradbury's work activities were not a substantial factor in her death. He eliminated lifting heavy objects as a cause of her cyst's rupture, explaining that from his reading of the literature, he believes that it requires significant force against the liver to rupture a cyst. He concluded that her cyst might have ruptured regardless of whether she was at work.

Dr. Nelson is a professor of medicine and a hepatologist who has treated patients with hydatid cysts. He does not restrict his patients from lifting or working because he does not believe that these activities rupture cysts. Dr. Nelson explained that hydatid cysts can rupture spontaneously or from trauma, usually a blunt rapid blow, to the abdomen. Dr. Nelson indicated that Bradbury's cyst probably ruptured spontaneously.

### 2. The Board's decision and subsequent proceedings

The Board issued its decision on October 13, 2000: The Board considered three issues: (1) whether Linda Bradbury's work activities were a substantial factor in her death; (2) whether it would award death benefits; and (3) whether it would award attorney's fees. In a 2–1 decision, the Board denied Bradbury's claims and dismissed her case.

Dennis Bradbury petitioned for reconsideration of the Board's decision in October

2000. The Board denied and dismissed the petition. Bradbury then appealed to the superior court, which, acting as an intermediate court of appeal, affirmed the Board's decision. Dennis Bradbury appeals this decision.

## III. STANDARD OF REVIEW

When the superior court acts as an intermediate court of appeals, we independently review the merits of the administrative decision.[1] "We review the administrative agency's findings to determine whether they are supported by substantial evidence."[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] We do not determine witness credibility; the Board makes those determinations exclusively.[4] Therefore, even when conflicting evidence exists, we uphold the Board's decision if substantial evidence supports it.[5]

## IV. DISCUSSION

### A. Dennis Bradbury Is Not Entitled to Workers' Compensation Benefits for His Wife's Death.

#### 1. Burden of proof

The Alaska Workers' Compensation Act creates a presumption that an employee's claims are compensable.[6] "Applying this presumption involves a three-step analysis."[7] First, the employee must establish a link between her injury and her employment.[8] In this case, the Board found that Dennis Bradbury introduced sufficient evidence to establish a link between his wife's death and her work. Chugach Electric does not challenge the Board's finding that Dennis Bradbury satisfied his burden of establishing this preliminary link.

---

1. *DeYonge v. NANA/Marriott,* 1 P.3d 90, 94 (Alaska 2000).

2. *Id.*

3. *Id.* (internal quotations omitted).

4. *Id.*

5. *Id.*

6. *Temple v. Denali Princess Lodge,* 21 P.3d 813, 815–16 (Alaska 2001).

7. *Id.* at 816.

8. *Id.*

Next, we ask whether the employer rebutted the presumption with substantial evidence.[9] The employer's substantial evidence must either "(1) provide[ ] an alternative explanation [for the injury] which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminate[ ] any reasonable possibility that employment was a factor in causing the disability."[10] The burden of production at this stage shifts to Chugach Electric, but not the burden of persuasion; thus, we examine Chugach Electric's evidence in isolation from Dennis Bradbury's evidence to the contrary.[11] We have held that "[i]t has always been possible to rebut the presumption of compensability by presenting a qualified expert who testifies that, in his or her opinion, the claimant's work was probably not a substantial cause of the disability."[12] The Board found that Chugach Electric satisfied this burden by presenting the testimony of Dr. Flora and Dr. Nelson, who both gave the opinion that Linda Bradbury's cyst ruptured spontaneously and not because her work activities caused trauma to her abdomen.

Finally, after an employer rebuts the presumption that injuries are work-related, an employee can only prevail if his or her claim is proven by a preponderance of the evidence.[13] To prove a claim by a preponderance of the evidence, the employee must induce a belief in the trier of fact that the asserted facts are probably true.[14] The Board found that Dennis Bradbury failed to satisfy this burden because there was no direct evidence that his wife suffered trauma to her abdomen and because the circumstantial evidence that he presented was insufficient to prove his claim. Dennis Bradbury argues that the Board's decision is not supported by substantial evidence.

**2. Chugach Electric produced substantial evidence that Linda Bradbury's work as a bull cook was not a substantial factor in her death.**

**a. Chugach Electric provided an alternative, non-work-related explanation for Linda Bradbury's death, which excludes work-related factors as a substantial cause of her death.**

The Board relied upon Dr. Nelson and Dr. Flora's testimony in concluding that substantial evidence indicated that Linda Bradbury's death was not work-related. Both doctors are medical professors and hepatologists who have seen and treated patients with hydatid cysts.

The doctors provided an alternative explanation for the rupture that was not work related.[15] Both doctors gave the opinion that Bradbury's cyst ruptured spontaneously and that it did not rupture because of trauma to her abdomen. Moreover, Dr. Flora and Dr. Nelson believed that the cyst was either in the process of rupturing or had ruptured by the time Bradbury arrived at work on June 18. Both doctors placed great significance on the symptoms that she experienced in the weeks prior to her death. Dr. Flora noted that Bradbury complained of abdominal pain for two weeks before her death and that during her week off, a blood test revealed a higher than normal amount of eosinophils in her blood. Dr. Flora explained that the body produces eosinophils in response to parasitic infections. The heightened level of eosinophils in her blood suggested to Dr. Flora that Bradbury's cyst was slowly leaking and that it did not necessarily rupture suddenly on the day that she died. Dr. Flora gave the opinion that fluid leaking from the cyst onto the liver and into the abdominal cavity caused her severe abdominal pain. He con-

9. *Id.*

10. *DeYonge,* 1 P.3d at 96.

11. *Childs v. Copper Valley Elec. Ass'n,* 860 P.2d 1184, 1188 n. 5 (Alaska 1993).

12. *Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992).

13. *Temple,* 21 P.3d at 816.

14. *Saxton v. Harris,* 395 P.2d 71, 72 (Alaska 1964).

15. *See DeYonge,* 1 P.3d at 96.

cluded that Linda Bradbury's cyst ruptured spontaneously.

Dr. Nelson also focused on the severe abdominal pain Bradbury experienced before she died. Dr. Nelson explained that pain severe enough to wake someone out of sleep is a worrisome complaint to doctors because it suggests significant activity within the abdomen. He noted that Bradbury's symptoms changed dramatically in the week before she returned to work. He linked these changes to the cyst's rupture: "It's well recognized that sudden onset of changed symptoms with cysts usually herald[s] cyst rupture." He, like Dr. Flora, gave the opinion that the cyst ruptured spontaneously. A reasonable mind could accept Dr. Flora and Dr. Nelson's testimony as adequate to support the conclusion that Bradbury's cyst ruptured spontaneously and not from work-related trauma to her abdomen.

> **b. Chugach Electric presented substantial evidence such that it directly eliminated any reasonable possibility that employment was a factor in causing Linda Bradbury's death.**

 Dennis Bradbury argues that Dr. Flora and Dr. Nelson's opinions do not constitute substantial evidence because their opinions did not eliminate all work-related causes of his wife's death. Dennis Bradbury makes two points in support of this argument. First, he asserts that the experts simply did not rule out all work-related causes of his wife's death. Dennis Bradbury points out that Dr. Flora said that he could not rule out the possibility that work activities accelerated the cyst's degeneration toward its ultimate rupture. However, Dr. Flora also testified that it was more likely than not that work activities did not accelerate the cyst's rupture. Because an employer "may rebut the presumption of compensability by presenting a qualified expert who testifies that, in his or her opinion, the claimant's work was not a substantial cause of the [injury]," Dr. Flora's testimony satisfies our standard for substantial evidence.[16]

Dennis Bradbury further claims that because Dr. Nelson could not say with certainty how much pressure it would take to rupture the cyst, he could not rule out work-related trauma as a substantial factor in Linda Bradbury's death. We addressed and rejected a similar argument in *Norcon, Inc. v. Alaska Workers' Compensation Board.*[17] In *Norcon*, two physicians testifying for the employer gave their opinions that the employee's heart attack while on the job was not work-related.[18] We held that the physicians' testimony constituted substantial evidence.[19] Significantly, we rejected the argument that because of medical uncertainty regarding the causes of sudden cardiac death, the physicians' opinions that the employee's work was not a substantial factor in his death should be discounted.[20] We concluded that this argument, if accepted, would lead to an irrebuttable presumption of compensability whenever an employee died of a heart attack.[21] As in *Norcon*, medical uncertainty exists here. Dennis Bradbury's lawyer asked Dr. Nelson how much pressure it would have taken to rupture the cyst. Dr. Nelson responded that there is no way to quantify the necessary amount of pressure. We have recognized that a medical professional's testimony is not inconclusive and does not fail to exclude work-related causes of death simply because the witness does not state his or her opinion in absolute terms.[22]

---

16. *Norcon, Inc. v. Alaska Workers' Comp. Bd.,* 880 P.2d 1051, 1054 (Alaska 1994) (quoting *Big K Grocery,* 836 P.2d at 942).

17. 880 P.2d 1051 (Alaska 1994).

18. *Id.* at 1054.

19. *Id.* at 1055.

20. *Id.* at 1055 n. 4

21. *Id.*

22. *Childs v. Copper Valley Elec. Ass'n,* 860 P.2d 1184, 1189 (Alaska 1993) ("The weight of [medical] testimony ... should not be too sharply discounted because of the disposition of the highly trained scientific mind to refrain from unqualified statements or opinions on such matters as causation.") (quoting Arthur Larson, *The Law of Workmen's Compensation* § 80.32, at 15–834—835 (1992)).

Both Dr. Flora and Dr. Nelson ruled out trauma as a possible cause of the cyst's rupture, thereby eliminating a work-related explanation for the rupture.[23] Dr. Nelson explained that the liver accommodates gentle pressure by moving; therefore, neither holding a heavy object against one's chest nor leaning over a sink would rupture a cyst. Dr. Nelson also explained that the medical literature dealing with traumatic ruptures of hydatid cysts generally describes blunt, rapid trauma to the abdomen that ruptures a cyst—the type of trauma that happens during sporting events, when a player might be elbowed in the stomach. Dr. Nelson concluded that none of Bradbury's work activities were likely to rupture a cyst. Again, this satisfies our standard for substantial evidence.

Second, Dennis Bradbury contends that Dr. Flora and Dr. Nelson did not know about all of his wife's activities and therefore based their opinions on incomplete information about the amount of trauma she may have encountered in her job. He claims, for example, that the video reenactment of his wife's work duties was incomplete and thus the basis of Dr. Flora and Dr. Nelson's opinions was flawed. Dr. Flora testified, however, that unless Linda Bradbury suffered a blow to her abdomen, regular work duties would not cause sufficient trauma to rupture her cyst. Dr. Flora and Dr. Nelson's testimony thus eliminated work as a substantial factor in Linda Bradbury's death. Their testimony therefore constituted substantial evidence.

**3. Substantial evidence supports the Board's decision that Dennis Bradbury failed to prove by a preponderance of the evidence that Linda Bradbury's death was work-related.**

Because Chugach Electric overcame the presumption of compensability, Dennis Bradbury had to prove his claim by a preponderance of the evidence.[24] To prove a claim by a preponderance of the evidence, the claimant must induce a belief in the trier of fact that the asserted facts are probably true.[25] We apply the substantial evidence test to determine whether a workers' compensation claimant has met this burden.[26]

The Board found that Dennis Bradbury failed to prove his claim by a preponderance of the evidence. The Board found the circumstantial evidence that he introduced, coupled with the lack of direct evidence, to be insufficient to prove his claim that his wife suffered any trauma to her abdomen on the day she died.[27] The Board concluded that Linda Bradbury's cyst ruptured prior to her return to work and that it would have ruptured regardless of her work activities.

Dennis Bradbury argues that the Board's decision is not supported by substantial evidence. Rather than point to evidence that he presented to support his claim, he bases his argument upon perceived flaws in Dr. Flora and Dr. Nelson's testimony. He argues primarily that the doctors' opinions lack scientific bases. Dennis Bradbury essentially urges us to discount Dr. Flora and Dr. Nelson's opinions. But we do not re-weigh evidence when we review Board decisions[28] because the Board has the sole responsibility to determine witness credibility.[29]

23. *See DeYonge v. NANA/Marriott*, 1 P.3d 90, 96 (Alaska 2000).

24. *Norcon*, 880 P.2d at 1055.

25. *Saxton v. Harris*, 395 P.2d 71, 72 (Alaska 1964).

26. *Norcon*, 880 P.2d at 1055.

27. Dennis Bradbury challenges the Board's finding that the circumstantial evidence he presented was insufficient to prove his claim. He argues that "the best evidence of the effects of [Linda Bradbury's] work on the hydatid cyst was, in effect, circumstantial. It was her death." He contends that once the presumption of compensability attached, "it was wrong of the Board to require more than circumstantial evidence" for him to prove his claim. This argument lacks merit; the Board did not require more than circumstantial evidence, it simply rejected the circumstantial evidence presented as insufficient.

28. *Safeway, Inc. v. Mackey*, 965 P.2d 22, 29 (Alaska 1998).

29. *Id.; see also* AS 23.30.122.

A review of the testimony presented to the Board shows that substantial evidence supports the Board's decision that Dennis Bradbury failed to prove his claim by a preponderance of the evidence. Dennis Bradbury offered circumstantial evidence of his wife's activities on the day that she died; namely, a list of job responsibilities prepared by Claudia McLean. McLean worked the shift opposite Bradbury's shift; thus, the parties stipulated that this list represented activities that Linda Bradbury's job might have encompassed. However, no one actually saw Bradbury at work on that morning; therefore, her husband could not offer a witness to testify to what activities she performed. No one could testify that Bradbury performed her duties in a way that would inflict trauma upon her abdomen. The Board rejected the circumstantial evidence, concluding that to find for Dennis Bradbury they would have to speculate about what Linda Bradbury did that morning and whether it resulted in sufficient abdominal trauma to rupture her cyst.

The Board accepted Dr. Flora and Dr. Nelson's testimony that sudden changes in pressure are required to rupture a cyst and that placing an object against a cyst is not sufficient to rupture it. Thus, the Board implicitly rejected Dr. David Anaise and Dr. Gerald Robert's testimony to the contrary. When medical experts disagree about the cause of an employee's injury, we have held that as a general rule "it is undeniably the province of the Board and not this court to decide who to believe and who to distrust." [30] The Board acted appropriately in accepting Dr. Flora and Dr. Nelson's testimony over that of Dr. Roberts and Dr. Anaise. Because substantial evidence supported the Board's decision that Dennis Bradbury did not prove

his claim by a preponderance of the evidence, we affirm that decision.

### B. The Board Engaged in Reasoned Decision–Making.

Dennis Bradbury argues that the Board failed to engage in reasoned decision-making and that this violated his due process rights. He argues primarily that the Board ignored evidence refuting Dr. Nelson and Dr. Flora's testimony.

The Board summarized the evidence presented by each witness in its eighteen-page decision. The Board also reviewed the list of possible job activities prepared by Claudia McLean and the video reenactment of Linda Bradbury's possible work activities. A review of the Board's decision and of the evidence in the record shows that the Board engaged in reasoned decision-making. Dennis Bradbury's argument to the contrary essentially asks us to re-weigh the evidence, which we will not do.[31] The Board's decision that the testimony of certain doctors is more persuasive than that of others is precisely the type of credibility determination that only the Board may make.[32]

## V. CONCLUSION

Because Chugach Electric produced substantial evidence that Linda Bradbury's death was not work-related and because Dennis Bradbury failed to prove his claim by a preponderance of the evidence, we AFFIRM the Board's denial of benefits.

**30.** *Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1189 (Alaska 1993) (quoting *Kessick v. Alyeska Pipeline Serv. Co.*, 617 P.2d 755, 758 (Alaska 1980)).

**31.** *Safeway, Inc.*, 965 P.2d at 29.

**32.** *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1274 n. 11 (Alaska 1999).