Calvin L. McGAHUEY, Appellant,

v.

**WHITESTONE LOGGING, INC. and Alaska Timber Insurance Exchange, Appellees.**

No. S–13742.

Supreme Court of Alaska.

Oct. 21, 2011.

Rehearing Denied Nov. 10, 2011.

Calvin L. McGahuey, pro se, Crescent City, California, Appellant.

Patricia L. Zobel, DeLisio Moran Geraghty & Zobel, P.C., Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

A worker was involved in a fight in a logging camp bunkhouse. He did not file a report of injury related to the fight for over a year. When he finally filed a report of injury, he alleged that he had injured his hip, lower back, and ear in the fight. His employer controverted benefits because he did not give timely notice of the injury. The worker then alleged that he had verbally informed his supervisor of the injuries. After a hearing, the Alaska Workers' Compensation Board determined that the worker's claim was barred because he did not give his employer timely notice of the injury. The Board performed an alternative analysis assuming the worker had given timely notice and decided that the claim was not compensable. The Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. Because the Commission correctly determined that substantial evidence in the record supports the Board's decision on the compensability of the claim, we affirm the Commission's decision.

## II. FACTS AND PROCEEDINGS

Calvin McGahuey worked for Whitestone Logging, Inc. on Afognak Island, near Kodiak, during the first half of 2004. He worked on a boom boat and also performed general work around the camp. In March 2004 he was involved in a fight in the bunkhouse. According to McGahuey one or two of his co-workers attacked him in his room. McGahuey said that one of them slammed him into a table, injuring his back, and that to escape he had to jump out of a window that was 14 feet off the ground, injuring his hip. McGahuey went to the cook's house; the cook directed him to Mike Knudsen, one of the camp supervisors. McGahuey said that he was limping visibly after the fight and that he reported the injury to several people in the camp, including John Rivers, another camp supervisor; Joe Bovee, an employee of a different company whom McGahuey considered a supervisor; and Knudsen.

Rivers investigated the fight for Whitestone. Rivers was the camp manager of Whitestone's Afognak logging camp from the beginning of 2004 to May 2004; he was also the only qualified EMT in the camp at the time of the fight. Rivers's investigation showed that McGahuey had talked on a shared telephone for what his bunkmates thought was too long. One of them disconnected the phone and cut off McGahuey's conversation. After "words were exchanged" a fistfight began, during which McGahuey was pushed into another bunkhouse resident, who "joined the fray." McGahuey "either exited through a window or claimed he exited by a window." Rivers did not discipline McGahuey for the incident but gave written warnings to the other two men "for fighting in the bunkhouse and for being intoxicated."

Rivers talked to McGahuey as part of the investigation either the night of the fight or the next day. At that time, Rivers observed that McGahuey's "face was red in places so it looked like he had been involved in a fist fight but nothing real severe." According to Rivers, McGahuey "complained about being sore" but did not tell him about any injuries to his back or hip. Rivers stated that he observed McGahuey walking the day after the fight and McGahuey was not limping.

McGahuey returned to work the day after the fight; he missed no work after the altercation.

McGahuey went to a doctor in Kodiak on May 25 for an ear problem. The medical record from the visit did not show that McGahuey reported the fight or any complaints related to it. The doctor treated McGahuey for impacted earwax. On June 4 Whitestone laid McGahuey off work so he could attend to certain family obligations, and McGahuey returned to California. He filed a report of injury for his earwax problem in August, and Whitestone paid for the May doctor visit because the doctor thought the problem could be work related.

The first medical chart note that recorded McGahuey mentioning low back pain from the fight at Whitestone was a medical history form for chiropractic care dated April 4, 2005. On this form, McGahuey wrote that he had been in a work-related accident and had reported the accident to his employer but not to workers' compensation. He described his condition as "lower back injury and hip after the fight on the job" and reported pain that got worse with bending and working.

McGahuey filled out and signed a report of injury form, dated April 6, 2005, regarding the fight. Whitestone received the form in early May and filed a notice of controversion on June 16; the controversion said that Whitestone had not received timely notice of the injury, that McGahuey was intoxicated at the time of injury, and that the fight did not occur in the course and scope of employment. McGahuey did not submit other medical records showing he received continuing care for back pain.

McGahuey underwent a medical examination on October 12, 2005, before beginning to work for Simpson Timber Company in California. In his medical history, McGahuey responded "not lat[ely]" to the question whether he was bothered by back pain. He also reported that he had not sought medical treatment for back pain and did not have a medical history of "persistent back pain" or "significant back injury." Notes from the evaluation indicated that McGahuey could lift 100 pounds and carry that weight 20 feet.

On December 7, McGahuey was treated for lower back pain related to his work at Simpson; his doctor diagnosed a lumbar strain and ordered modified work for a week. An x-ray of the lumbar spine dated December 10 showed mild degenerative changes but was otherwise normal. McGahuey also sought chiropractic care; the chiropractor released him to regular duty work on December 12. Imaging studies from March 2006 of McGahuey's lower back, right hip, and brain were all normal.

McGahuey filed a written workers' compensation claim in Alaska on February 1, 2006, seeking $10,000 in medical costs and $10,000 in transportation costs. Whitestone controverted benefits, raising the same defenses it raised before. McGahuey amended his workers' compensation claim at a prehearing conference to include temporary total disability (TTD) and unfair or frivolous controversion.

The Board held a hearing on McGahuey's claim on October 11, 2006. The employer and insurer were represented by the department manager for the Alaska Timber Insurance Exchange, and McGahuey represented himself. McGahuey testified about the fight, his injuries, and his verbal report of the injuries. The manager summarized Whitestone's investigation of the fight and testified that Whitestone did not receive timely notice of injuries. In its November 2006 decision, the Board dismissed McGahuey's claim because he did not give the employer timely formal notice of the injury; it also found that none of the statutory excuses for a late-filed report applied.

McGahuey appealed to the Alaska Workers' Compensation Appeals Commission. The Commission determined that the Board failed to apply the necessary presumption analysis [1] and failed to make adequate findings, so it reversed the Board's decision and remanded the case to the Board for rehearing.

The Board held a second hearing on McGahuey's claim on April 24, 2008. At the second hearing, Whitestone was represented by counsel who presented several witnesses who testified about the investigation of the fight, their observations of McGahuey after the fight, the lack of notice Whitestone had of an injury, and the prejudice Whitestone suffered as a result of the late-filed notice. McGahuey testified that he reported "the matters" to Bovee and Rivers. McGahuey said he knew he was injured when he returned to California; he described his injury as "muscle tissue damage" to explain the lack of findings on imaging studies. McGahuey stated that the first time he knew he could not work because of his Alaska injuries was after he aggravated the injury working for Simpson.

Whitestone presented testimony from Rivers; Ronald Johnson, a camp manager at Afognak; Janelle Lepschat, an office worker at the Afognak camp; and Pamela Scott, the claims manager for its compensation carrier. Scott testified that she had not seen any medical reports taking McGahuey off work except for a note related to the Simpson injury. She testified that Whitestone had been prejudiced by McGahuey's late-filed notice because it was "no longer a ... viable company" and it could not get an accurate medical evaluation because so much time had elapsed before the report of injury.

Rivers testified about his investigation of the fight. According to Rivers, McGahuey did not report injuring his hip or back; Rivers said he would have sent McGahuey to Kodiak "as soon as a plane was available" if McGahuey had reported a back injury. Rivers did not "notice anything either verbal or non-verbal which would have indicated that [McGahuey had] sustained any kind of injury." Rivers said he was surprised when McGahuey filed the notice of injury because "generally when someone injures their back, it's an immediate pain or some indication that would cause them to say something to a supervisor."

Johnson testified that he was the camp manager for Whitestone from February to

---

**1.** AS 23.30.120(a) creates a presumption that "sufficient notice of the claim has been given" as well as a presumption that a claim is compensable. *See DeYonge v. NANA/Marriott,* 1 P.3d 90, 94 (Alaska 2000) (citations omitted) (applying presumption analysis to compensability of claim). In its first decision, the Board did not mention these presumptions.

November 2004. Johnson said McGahuey never reported that he had been injured in the bunkhouse fight and noted that McGahuey had not missed work as a result of the fight. Johnson indicated that he had never seen McGahuey limping or showing physical signs of injury, nor did anyone report to him as camp manager that McGahuey had made an injury claim. Lepschat, an office clerk at Whitestone's Afognak camp in 2004, testified that one of her responsibilities was completing report of injury forms and that no one asked her to complete a report of injury form on behalf of McGahuey. She also said that she drove McGahuey to retrieve some of his belongings before he left Afognak in June 2004 and that he never told her he was leaving because of an injury.

In its decision after rehearing, the Board dismissed McGahuey's claim because he had not filed a timely written notice of injury and Whitestone "did not receive informal notice of the March 2004 injury." The Board found that McGahuey was not a credible witness and that Whitestone's witnesses were credible. It applied a presumption analysis to the notice question. The Board found that McGahuey "narrowly raised the presumption [concerning] sufficient notice as to injuries claimed from the March 2004 altercation" and then concluded that he "failed to attach the presumption that he gave notice to the employer of his March, 2004 alleged injury."

The Board then assumed in the alternative that McGahuey had attached the presumption that he had given notice and decided that Whitestone had rebutted the presumption because McGahuey missed no work from the time of the fight until the time he left Afognak. It also found that Whitestone rebutted the presumption "on the notice issue" through the testimony of Johnson and Lepschat. The Board then weighed the evidence and decided that McGahuey had not proved by a preponderance of the evidence that he had given timely notice of his injuries to Whitestone. The Board decided that Whitestone "ha[d] established by a preponderance of the evidence that neither the employer or its agent had knowledge of the injury." It found that McGahuey did not show that his failure to give notice was excused and that Whitestone was prejudiced by the lack of timely notice.

The Board then performed a second alternative analysis assuming that McGahuey had given timely notice and evaluated his claims on the merits, using its three-step presumption analysis.[2] The Board decided that McGahuey had not presented enough evidence to attach the presumption of compensability because of "his lack of credibility." It then assumed in the alternative that he had attached the presumption and found that Whitestone had rebutted the presumption by pointing out gaps in the medical evidence and showing that McGahuey had a back condition prior to working for Whitestone. Finally, the Board decided that McGahuey had not proved his claim by a preponderance of the evidence because he was not credible and because the doctors who thought the back and hip complaints were work related relied on McGahuey's self-reported history when making the connection.

McGahuey again appealed to the Commission; this time the Commission affirmed the Board's decision. The Commission decided that the Board had again erred in applying the presumption analysis to the notice issue. But the Commission considered this error harmless because of the Board's alternative analysis. The Commission first found that McGahuey had produced enough evidence to attach the presumption of sufficient notice to Whitestone and that Whitestone adequately rebutted the presumption. The Commission then concluded that substantial evidence in the record supported the Board's finding that McGahuey had not proved by a preponderance of the evidence that he had provided timely notice to Whitestone or that he was excused from doing so. The Commission also decided that substantial evidence in the record supported the Board's finding that, assuming timely notice was given, McGahuey had not proved his injuries were work related. McGahuey appeals.

## III. STANDARD OF REVIEW

▮▮▮ In an appeal from the Workers' Compensation Appeals Commission, we re-

**2.** *See DeYonge,* 1 P.3d at 94 (summarizing presumption analysis).

view the Commission's decision.[3] We apply our independent judgment to questions of law that do not involve agency expertise.[4] We independently review the Commission's conclusion that substantial evidence in the record supports the Board's findings, which "requires us to independently review the record and the Board's factual findings." [5]

## IV. DISCUSSION

The Commission affirmed the second Board decision, concluding that substantial evidence supported the Board's findings that: (1) McGahuey did not give Whitestone timely formal notice of his injuries; (2) Whitestone did not have actual knowledge of the injuries and was prejudiced by the lack of formal notice; and (3) McGahuey "did not suffer a disabling injury to his hip, back, and ear in March 2004." In reaching this conclusion, the Commission identified errors in the Board's application of the presumption analysis but decided the errors were harmless. We agree with the Commission that the Board erred in its application of the presumption analysis in this case; we also agree that the errors were harmless.

### A. Notice

■ Alaska Statute 23.30.100(a) requires that written notice of an injury or death be given to the employer and the Board within 30 days of the date of injury or death. If written notice is not given as required, the claim is barred.[6] Alaska Statute 23.30.100(d) provides that failure to give notice can be excused when either: (1) the employer had actual notice of the injury and was not prejudiced by lack of written notice or (2) the

Board determines that notice could not be given "for some satisfactory reason." The Commission affirmed the Board's findings that McGahuey did not give timely formal notice and that Whitestone did not have actual notice and suffered prejudice as a result.

■ We conclude that the Commission and the Board both erred in failing to identify when the 30–day period for giving written notice began, but that the error was harmless.[7] The Board and the Commission both analyzed the compensability of McGahuey's claim, and because we decide that the ultimate resolution of the claim was correct, any errors in consideration of the notice issue were harmless.[8]

We held in *Cogger v. Anchor House* that the 30–day period for giving written notice "can begin no earlier than when a compensable event first occurs." [9] The date the 30–day period begins to run is important not only in determining whether formal notice was timely but also in assessing prejudice to the employer if notice was late. For example, in *Dafermo v. Municipality of Anchorage* a worker first complained about eye problems in 1985 or 1986, but doctors did not link the symptoms to his work with computers until September 1991.[10] He filed a report of injury in November 1991.[11] Although we held that his notice of injury was late, we decided that the employer was not prejudiced by failure to give timely notice because prejudice could only be measured from October 1991, and there was no evidence that the employer was prejudiced by a 30–day delay in notification.[12]

3. *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

4. *Id.*

5. *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

6. *See* AS 23.30.100(d) (setting out circumstances when failure to give notice does not bar a claim).

7. We agree with the Commission that any informal notice McGahuey gave to Bovee of his injuries was not notice to Whitestone. Bovee did not work for Whitestone. Even if he had, we have

held that informal notice of an injury to a co-worker does not give notice to an employer under AS 23.30.100. *Cogger v. Anchor House*, 936 P.2d 157, 161 (Alaska 1997).

8. *Carlson v. Doyon Universal–Ogden Servs.*, 995 P.2d 224, 228 (Alaska 2000).

9. 936 P.2d at 160.

10. 941 P.2d 114, 115–16 (Alaska 1997).

11. *Id.* at 116.

12. *Id.* at 117–19.

Neither the Commission nor the Board made a specific finding about when the 30–day period began to run in McGahuey's case. Without knowing when the 30–day limitations period began to run, we cannot assess whether the notice of injury was late or whether, if it was late, the employer suffered prejudice. But because the Commission correctly evaluated the Board's findings and conclusions on the compensability of McGahuey's claim, this error was harmless.

### B. Compensability Of McGahuey's Injuries

The Board performed an alternative analysis, assuming that McGahuey had given timely notice, and looked at the merits of his claim. McGahuey's claim was for medical treatment for his back and hip, in 2005 and afterwards, as well as medical treatment for a lump near his ear.[13] The Commission reviewed the Board's compensability analysis and affirmed the Board's decision. McGahuey asserts that the Board and Commission erred in finding that his claim was not compensable. Whitestone argues that the Commission correctly concluded that substantial evidence in the record supported the Board's findings.

■ In a workers' compensation case, the Board uses a three-step presumption analysis to evaluate the compensability of a worker's claim.[14] At the first step, the employee must attach the presumption of compensability by establishing a link between his employment and the injury.[15] "For purposes of determining whether the claimant has established the preliminary link, only evidence that tends to establish the link is considered—competing evidence is disregarded."[16] The Board "need not concern itself with the witnesses' credibility" when "making its preliminary link determination."[17]

■ In this case, the Board improperly considered McGahuey's credibility when it examined the evidence at the first stage of the analysis. Relying on dicta in *Osborne Construction Co. v. Jordan*,[18] the Commission wrote that it was "a close question whether the [B]oard erred in determining that McGahuey failed to raise the presumption of compensability because of 'his lack of credibility to effectively raise the presumption.'" To the extent the Commission suggested that the Board could consider credibility at the first stage, it was mistaken. We have repeatedly stated that the Board cannot consider credibility at the first stage of the presumption analysis.[19] We agree with the Commission, however, that any error the Board made was harmless because the Board did an alternative analysis, assuming that McGahuey had attached the presumption.

■ If the presumption attaches, the second step of the presumption analysis provides that an employer may rebut the presumption by presenting substantial evidence that: (1) provides an alternative explanation which would exclude work-related factors as a substantial cause of the disability, or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability.[20] The Board looks at the evidence to rebut the presumption in isolation, without weighing it.[21]

---

13. McGahuey made a claim for TTD, but it is not clear during what period of time McGahuey thought he was eligible for TTD.

14. *Smith v. Univ. of Alaska, Fairbanks*, 172 P.3d 782, 788 (Alaska 2007) (citing *Bradbury v. Chugach Elec. Ass'n*, 71 P.3d 901, 905 (Alaska 2003)).

15. *Id.*

16. *Tolbert v. Alascom, Inc.*, 973 P.2d 603, 610 (Alaska 1999).

17. *Resler v. Universal Servs., Inc.*, 778 P.2d 1146, 1148–49 (Alaska 1989).

18. 904 P.2d 386, 392 (Alaska 1995).

19. *Excursion Inlet Packing Co. v. Ugale*, 92 P.3d 413, 417 (Alaska 2004); *DeYonge v. NANA/Marriott*, 1 P.3d 90, 95 (Alaska 2000); *Carlson v. Doyon Universal–Ogden Servs.*, 995 P.2d 224, 228 (Alaska 2000); *Tolbert*, 973 P.2d at 610; *Resler*, 778 P.2d at 1148–49.

20. *Smith v. Univ. of Alaska, Fairbanks*, 172 P.3d 782, 788 (Alaska 2007) (citing *Bradbury v. Chugach Elec. Ass'n*, 71 P.3d 901, 906 (Alaska 2003)).

21. *Stephens v. ITT/Felec Servs.*, 915 P.2d 620, 624 (Alaska 1996) (citing *Veco, Inc. v. Wolfer*, 693 P.2d 865, 869 (Alaska 1985)).

The Board found that Whitestone rebutted the presumption of compensability by showing that: (1) McGahuey "did not complain about his back and relate his back condition to the March 2004 altercation until he saw doctors in late 2005 and 2006"; (2) McGahuey "had a back condition during the four years prior to the March 2004 injury"; (3) McGahuey failed to report an injury to his hip and back in May 2004, when he saw the doctor in Kodiak;[22] and (4) no physician "independently" connected his work and his back pain, relying instead on McGahuey's reports.

The Commission correctly decided that the Board's conclusion—that Whitestone rebutted the presumption—was supported by evidence in the record. Whitestone presented evidence that McGahuey had been treated for low back pain in 2002 and possibly earlier. A preexisting back condition alone might not eliminate any reasonable possibility that his employment with Whitestone was a factor in causing later back pain.[23] But a preexisting back condition together with the lack of contemporaneous complaints of back pain or evidence of a home-treatment regimen is adequate evidence to support a conclusion that the back pain McGahuey reported in April 2005—more than a year after the fight—was not caused by the fight, particularly when the imaging studies from 2005 and 2006 were normal.

As to the hip condition, Whitestone presented evidence that McGahuey was not limping in the days following the injury and that he did not report hip pain near the time of the fight. A March 2006 MRI of McGahuey's hip was normal. This evidence supports the conclusion that any need for medical treatment of McGahuey's hip in 2005 and later was not related to his employment at Whitestone. Finally, with respect to the lump near McGahuey's ear, at least two doctors indicated in their chart notes that it was not work related. These opinions were adequate evidence to rebut the presumption of compensability.[24]

If an employer rebuts the presumption of compensability, at the third step of the analysis the burden shifts to the employee to prove his claim by a preponderance of the evidence.[25] At the third stage, the Board was permitted to weigh the evidence and consider McGahuey's credibility.[26] The Board alone can determine witness credibility.[27]

Because the Board found that McGahuey was not credible, the Commission correctly concluded that substantial evidence in the record supported the Board's decision. The only links between McGahuey's back and hip pain and the Whitestone fight were his testimony and his statements to doctors that the back and hip pain arose after the fight. After the Board determined that his account of the injuries was not credible, there was no evidence to establish the compensability of any of his injuries. The normal imaging studies of his back and hip likewise provided evidence that he did not suffer a compensable injury.

The same analysis applies to the lump near McGahuey's ear, which was later determined to be a lipoma.[28] Although at least one doctor indicated that the lipoma could be associated with trauma, the link between trauma and the fight at the Afognak camp depended on the Board's believing McGa-

---

22. We recognize that McGahuey indicated that he reported fight-related injuries to the Kodiak doctor. But the medical record from the visit did not show complaints related to any fight-related injuries. Examining the chart notes in isolation supports Whitestone's contention that McGahuey did not discuss any fight-related injuries with the doctor in May 2004.

23. *See Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 315 (Alaska 1981) (holding that a preexisting condition does not disqualify a claim if the employment aggravated the condition to produce injury or disability).

24. *Smith,* 172 P.3d at 788 (citing *Bradbury,* 71 P.3d at 906).

25. *Id.*

26. *Steffey v. Municipality of Anchorage,* 1 P.3d 685, 691 (Alaska 2000) (citing *Stephens v. ITT/Felec Servs.,* 915 P.2d 620, 627 (Alaska 1996)).

27. AS 23.30.122.

28. A lipoma is a "benign tumor of chiefly fatty cells." WEBSTER'S II NEW COLLEGE DICTIONARY 654 (3d ed. 2005).

huey's account of the fight and his resulting injuries. The Board's finding that McGahuey was not credible removed any causal link between his employment and the lipoma. The Commission did not err in concluding that substantial evidence supported the Board's finding that McGahuey did not prove his claim by a preponderance of the evidence.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the Commission's decision.