*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARILYN A. COPPE, | ) | |
| | ) | Supreme Court No. S-14938 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 11-004 |
| | ) | |
| MICHAEL BLEICHER, M.D. and | ) | O P I N I O N |
| LAURIE BLEICHER, M.D., | ) | |
| and LIBERTY NORTHWEST | ) | No. 6863 – February 14, 2014 |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances:  Marilyn A. Coppe, pro se, Anchorage, Appellant.  Randall J. Weddle and Selena R. Hopkins-Kendall, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

I.     INTRODUCTION

Marilyn Coppe worked in the medical offices of Drs. Michael and Laurie Bleicher from 1994 to 2003.  In early 2003, she began to experience respiratory and pain

symptoms, which she attributed to her work environment. After her work with the Bleichers ended in October 2003, Coppe sued them in superior court for wrongful discharge. According to Coppe, she became aware during the course of the litigation that she could file a claim with the Alaska Workers' Compensation Board for work-related medical problems. She filed a report of injury in August 2005, alleging that she had suffered an orthopedic strain from repetitive work. She also alleged that she suffered respiratory symptoms due to her work environment. After a hearing, the Board denied her claim, and the Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. Coppe argues that the Board and Commission made factual and legal errors in deciding her case. We affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

Marilyn Coppe worked for Drs. Michael and Laurie Bleicher for almost nine years, performing clerical and office work. During the time she worked for the Bleichers, she occasionally strained her back from lifting and experienced some shoulder and arm pain. According to Coppe, she did not have employment-related health insurance, and Dr. Laurie Bleicher treated her for some of her medical problems.

In April 2003 Coppe began to experience numerous symptoms, "including sore throat, dry mouth, headache, dizziness, and pain in the upper part of her chest." She thought that her symptoms were caused by her work environment because the symptoms improved when she was not at work. Coppe saw a nurse practitioner, who ordered testing to rule out other conditions; the nurse practitioner did not give Coppe a definitive diagnosis, noting a "[p]ossible allergic reaction" related to her workplace. Coppe visited the nurse practitioner again a few weeks later and asked for a note excusing her from work while environmental testing was performed. Coppe was concerned that the testing would cause her symptoms to increase, and the nurse practitioner provided the requested note.

Coppe also wrote to other occupants of the building to learn if anyone else was experiencing symptoms like hers. A few people responded, indicating that they had experienced some of the symptoms Coppe listed. Coppe asked her employers to investigate, and Dr. Michael Bleicher wrote the building manager to request that the duct system and fluorescent lights be cleaned.

The building owners hired an environmental consultant to conduct indoor air quality tests. The environmental consultant identified two possible areas of concern: "a possibility of decaying organic matter generating allergenic bioaerosols and the potential for inadequate outdoor air being added" to the indoor air. The consultant suggested modifying the outdoor-air intake to bring in more outside air and cleaning the leaves, brush, and other organic material from the area near the air intake. Monitors placed in two of the office suites, including the Bleichers' offices, found no evidence of harmful levels of carbon monoxide or carbon dioxide.

In July Coppe saw an allergist, who conducted tests and found that Coppe had no allergies. Coppe next contacted Alaska Occupational Safety and Health (AKOSH), asking it to inspect the office. She continued to experience symptoms, and on October 3, 2003, she saw Dr. Robin Galloway, who diagnosed her with allergic rhinitis and possible bronchospasm. The bronchospasm diagnosis was based on a report that Coppe sometimes wheezed at work. Dr. Galloway provided Coppe with medication, noted that Coppe's symptoms were "consistent with allergies that have developed as a consequence of an environmental exposure," and instructed her to come back in a month. Coppe then contacted the Bleichers about her work. According to the Bleichers' notes, they met with Coppe after her appointment with Galloway; Coppe asked them for leave, which they allowed. The notes reflect that Coppe was going to take two weeks of unpaid leave to look for other work and would "let [the Bleichers] know her thoughts" after the AKOSH response to her inspection request.

AKOSH informed Coppe by letter on October 7, 2003 that it would not inspect the Bleichers' office because regulatory standards did not "address [her] complaint item at this time." Coppe again talked to the Bleichers; their notes reflect that they had a series of phone conversations with her on October 9 and 10, 2003 about her respiratory symptoms and her work. Coppe insisted that her symptoms had originated in the work environment, maintaining that they had "escalated" after a wind storm in March 2003. Coppe was convinced that whatever was causing her symptoms was in the ventilation system of the building and pointed out that other workers in the building had complained about being sick as well. Dr. Michael Bleicher responded that the building manager had reported that those workers' symptoms had improved. Coppe and Dr. Michael Bleicher spoke about ending Coppe's employment with the Bleichers;[1] they also discussed Coppe's pension and a letter of recommendation. Coppe was to pick up her belongings from the office the following Monday. Coppe received unemployment with no waiting period after the state unemployment division decided she had left work "due to health reasons."

Soon after Coppe stopped working for the Bleichers, she reported to her doctor that "her [respiratory] symptoms [had] completely resolved without the assistance of medications," but she then began experiencing symptoms of depression. Coppe also reported hand pain, which she thought was related to "repetitive use during her former employment." Her doctor told her to take ibuprofen for the hand pain and offered her medication for depression; Coppe expressed an interest in psychotherapy rather than medication. In December Coppe began taking an antidepressant, which she discontinued after she began to feel better. The record reflects that she was again taking an

___

[1]     Whether Coppe quit or was fired was contested. *See Coppe v. Bleicher*, Mem. Op. & J. No. 1377, 2011 WL 832807, at *2 (Alaska, Mar. 9, 2011).

antidepressant in October 2005 but continued to experience symptoms of depression; her doctor referred her to psychotherapy at that time.

In 2005 Coppe sued the Bleichers for wrongful discharge.[2] Dr. Michael Bleicher moved for summary judgment based on AS 23.30.055, the exclusive liability provision of the workers' compensation act.[3] According to Coppe, someone told her during the course of the employment litigation that she could file a claim with the Board. She signed a report of injury on August 26, 2005. The Bleichers filed a notice of controversion on November 8 on the basis that the claim was "barred under AS 23.30.100."[4]

On November 16, 2005, Coppe filed a written workers' compensation claim for permanent partial impairment (PPI), medical and transportation costs, penalty, interest, and "unfair or frivolous controvert." She alleged that she suffered from depression, rhinitis, and bronchospasm and that she had experienced work-related injuries to her back, hands, and knees, as well as her right shoulder and wrist. The Bleichers filed another controversion notice on December 1, listing a number of reasons to deny the claim.

Coppe engaged in counseling and saw a psychiatrist for medication from late 2005 to about July 2006. During this time she also consulted with Dr. Claribel Tan, who diagnosed Coppe with fibromyalgia. Dr. Tan gave the opinion that "there is no

---

[2]     *See id.* at *2-3 (setting out factual and procedural history). Coppe initially sued only Dr. Michael Bleicher; she later added Dr. Laurie Bleicher as a defendant, but the superior court dismissed the case against Dr. Laurie Bleicher based on the statute of limitations. *Id.* at *2.

[3]     *Id.* at *2.

[4]     AS 23.30.100(a) requires that notice of a work-related injury be given to both the employer and the Board within 30 days of the injury.

current evidence for any environmental causes for fibromyalgia" and recommended "psychiatric evaluation and consultation."

In March 2006 Coppe testified at a deposition related to her workers' compensation claim. During the deposition she testified that her allergy-like symptoms ended after she stopped working for the Bleichers. She testified about her back, shoulder, and wrist pain and her respiratory symptoms. She said she hoped to get some back pay and compensation for doctor visits related to her earlier injuries.

The Bleichers arranged an employer's independent medical evaluation (EIME) with Dr. Bryan Laycoe, an orthopedist; he examined Coppe on April 15, 2006, and reviewed her medical records. Dr. Laycoe diagnosed Coppe with major depression by history and multiple pain complaints. He did not think Coppe's "work activities were a substantial factor in her complaints of pain" and found "no diagnosis of a physical condition which [could] be related" to her work activities. He recommended treatment for depression, in part because he thought it might improve her perception of her pain, but he did not think the treatment would be for a work-related condition.

Coppe began treating with a chiropractor, Dr. James Pizzadili, in 2006. Also in 2006, Coppe had thermograms performed and saw a naturopath. The naturopath ordered allergy testing as well as testing for heavy metals. The tests showed no evidence of significant allergies but indicated that Coppe had high levels of some metals. She received chelation therapy for elevated levels of copper in her blood. Coppe also continued treating with Dr. Pizzadili; he diagnosed her with multiple problems related to toxic encephalopathy from exposure to chemicals at work. He ordered an MRI, the results of which were normal.

In November 2006 Coppe filed an amended workers' compensation claim, seeking increased medical costs, as well as permanent total disability (PTD) and an

additional penalty because the Bleichers had not reported her injury in 2003.[5]   The Bleichers answered, denying all claims, and filed two more controversion notices.

In February 2007 Dr. Eric Goranson, a psychiatrist, examined Coppe at the Bleichers' request.  He concluded that Coppe most probably suffered from a conversion disorder, although he could not rule out malingering or factitious disorder.  He did not think her psychiatric conditions were work related.  The Bleichers then filed a controversion notice based on Dr. Goranson's report.

The Bleichers scheduled another EIME, to take place in July 2007 in Oregon, with two doctors, Dr. Emil Bardana, Jr., a professor of immunology and allergy, and Dr. Brent Burton, a professor of toxicology and occupational medicine.  Coppe did not attend the EIME, so the doctors based their opinions on a review of her medical records.[6]   Neither Dr. Bardana nor Dr. Burton thought Coppe had a work-related condition; both noted psychological diagnoses, but neither could find any evidence of disease or injury in his specialty.

Coppe consulted with Dr. Gunnar Heuser, a physician in California, in 2007.  He performed some testing, including tests for attention deficit disorder and respiratory problems, and concluded that her symptoms were consistent with toxic exposure.  Dr. Heuser provided a report to the Board in February 2009 that explained why Coppe might be suffering from "sick building syndrome" even though she had not worked for the Bleichers for several years.  Dr. Heuser diagnosed Coppe with toxic

---

[5]      An employer is required to report an employee's illness or injury to the Board within 10 days after the employer knows of the injury or illness; the statute permits the Board to assess a penalty equal to "20 percent of the amounts that were unpaid when due."  AS 23.30.070(a), (f).

[6]      Evidently Coppe misread the departure time and missed her flight to Oregon.

encephalopathy, fibromyalgia, depression, orthopedic problems, and a sleep disorder. In his opinion, all of these conditions except the orthopedic problems were "due to a toxic work environment."

Because of the conflicting opinions of Coppe's and the Bleichers' experts, the Board ordered a second independent medical evaluation (SIME) and selected Dr. Thomas Martin, who specializes in occupational and environmental medicine and toxicology, as the SIME physician. Dr. Martin performed a record review but did not examine Coppe because she was too ill to travel. Dr. Martin concluded there was no evidence that Coppe had suffered a work-related exposure to any toxin, in part because "[t]here is no evidence of any toxins in the workplace that would or could be responsible for creating a sick building." He also concluded that Coppe did not have any condition or disability related to her employment with the Bleichers. Dr. Martin thought Coppe could work as an administrative assistant with no restrictions.

The Board held a hearing on Coppe's claim in December 2010. Coppe represented herself with the assistance of a lay representative. Dr. Burton testified at the hearing, as did Coppe, Dr. Michael Bleicher, Dr. Pizzadili, and Coppe's husband. The Board had deposition testimony from a number of other witnesses, including Dr. Bardana, Dr. Goranson, and the employees who returned Coppe's 2003 questionnaire about symptoms.

Coppe's husband, who is a general contractor, testified about an inspection he had done of the office building in 2008. He identified a number of deficiencies in the building and testified that because of water damage, the building might be susceptible to mold, which he said was part of sick building syndrome. He also testified that his wife's symptoms arose after a storm in March 2003, but they did not know until 2006 that her symptoms were associated with the building.

Dr. Pizzadili testified about his treatment of Coppe and his PPI rating. He testified that the tests she had undergone for heavy metals and brain damage were reliable, and he concluded that she had suffered an exposure to toxins in the workplace that had caused her current disability. He noted that others in the building had also suffered environmental illnesses. Dr. Pizzadili testified that he had no formal training in toxicology or psychiatry; his training was in forestry and chiropractics.

Dr. Michael Bleicher testified about maintenance in the office building as well as steps that had been taken to address Coppe's environmental complaints. He testified that he and his wife had displayed a notice about workers' compensation insurance in the office; he also said that he told his employees how to file for workers' compensation when they reported an injury.

Dr. Burton testified at length. He agreed with Dr. Martin's SIME report as well as Dr. Bardana's EIME report. Dr. Burton still held the same opinions he gave in his written report. According to Dr. Burton, Dr. Heuser had been "excluded as a witness based on the *Da[u]bert*[7] criteria" in at least one lawsuit. He questioned the accuracy and reliability of the testing Dr. Heuser had performed on Coppe; Dr. Burton also questioned the value of thermographic testing. Dr. Burton denied that fibromyalgia could be caused by exposure to toxins, saying it is a rheumatologic disorder. Although Dr. Burton questioned the validity of the test used by Coppe's physicians to diagnose exposure to toxins, he said that even if it were a valid measure of metals in her system, none of the values showed any cause for concern. Dr. Burton added that even if there were mold in the building, there was no evidence to connect any of Coppe's medical problems with exposure to mold.

---

[7] He was apparently referring to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993) (setting out test for admissibility of scientific testimony).

In its final decision, the Board denied Coppe's claim. The Board first decided that Coppe's claim was filed late but that the Bleichers had actual notice of the injury. As a result, the Board did not dismiss the claim, but it held that the presumption of compensability in AS 23.30.120 did not apply to the claim so that Coppe had to prove all elements of her claim by a preponderance of the evidence. The Board went through the initial two steps of the presumption analysis in the alternative,[8] deciding that if the presumption analysis applied, the presumption would have attached through the testimony of Coppe, her husband, and Dr. Pizzadili. The Board then concluded that the Bleichers would have rebutted the presumption through the testimony of Drs. Bardana, Burton, Goranson, and Laycoe.

In evaluating the evidence to determine whether Coppe had proved her claim by a preponderance of the evidence, the Board decided that Coppe had not met her burden of proof. The Board found Dr. Burton to be a credible witness and also decided that Dr. Martin was credible. The Board gave less weight to Dr. Pizzadili's testimony because he did not have specific training in toxicology and because his opinions relied in part on erroneous factual information, including Coppe's report that others in the building suffered symptoms similar to hers. The Board noted that (1) Coppe had reported to her doctor in November 2003 that her symptoms had resolved and (2) the other employees who initially responded to Coppe's questionnaire later denied that the building caused their symptoms. The Board further supported its decision by pointing

---

[8] Before 2005, the presumption analysis consisted of three steps: (1) the employee was first required to attach the presumption of compensability through some evidence linking her work and her disability; (2) if the presumption attached, the employer had to rebut the presumption by presenting evidence that the disability was not work related; and (3) if the presumption was rebutted, the employee had to prove all elements of her claim by a preponderance of the evidence. *See Smith v. Univ. of Alaska, Fairbanks*, 172 P.3d 782, 788 (Alaska 2007).

out that an environmental consultant had found "no unsafe levels of lead, arsenic, mercury, or nickel" in the office water and that the allergy doctor who examined Coppe in 2003 found no evidence of allergies.

The Board summarized the relevant testimony of the medical witnesses it found more credible, specifically recognizing that "there is no evidence the building produced any contaminants that would be toxic to [Coppe]." The Board also observed that Coppe's symptoms "improved by November 2003 so if the building were making her sick, her removal from the building cured the problem." Additionally Coppe's "symptoms did not actually worsen until more than two years later." The Board decided that "[t]he preponderance of the evidence . . . establishes the work environment was not toxic and is not the source of [Coppe's] current disability."

The Board went on to decide Coppe's PTD claim separately, finding that the evidence showed that Coppe was able to work in 2003. It also found that "[a]ny work injury was at most temporary" because Coppe's "symptoms resolved by November 2003, and her depression resolved by July 2006." The Board further noted that Coppe looked for work until early 2006, work was available in her occupation, and Coppe indicated that "the only reason she could not find work as a secretary was because [the Bleichers] would not give her a reference." The Board denied the PTD claim.

Coppe appealed to the Commission. During the course of the appeal, a dispute developed about whether certain documents had been filed with the Board. The Commission wrote to Coppe and told her that the documents in question were not in the record and, as a result, it could not consider them. According to a memo in the record, Coppe responded by calling the Commission and claiming that she had filed the missing documents on June 11, 2009, along with other documents that were in the record. The Commission's clerk advised Coppe to include the documents in her excerpt of record and

to provide record citations in her brief to support her contention that she had discussed the missing documents at the Board level.

Coppe included the pages in her excerpt; the Bleichers asked the Commission to order Coppe to "cure defects" in her brief and excerpt of record and to dismiss the appeal. One of the defects they identified was the inclusion of documents in her excerpt that were not in the Board record. The Commission ordered that Coppe remove six documents from her excerpt, including a report of injury for allergic rhinitis and bronchospasm, and revise her brief. The Commission issued a supplemental order in which it acknowledged that the report of injury was in fact in the record; the Commission nevertheless determined that the document was "inadmissible" for purposes of Coppe's appeal because it had a different workers' compensation number and the Board had "issued no decision or order" related to that case.

The Commission affirmed the Board's decision. The Commission decided that any problem with the Board's application of the presumption analysis was moot because the Board had provided two different analyses of the evidence, one applying the presumption and one not applying it. The Commission determined that the Board had not overlooked evidence and that substantial evidence supported the Board's decision. The Commission also decided that Coppe had waived or abandoned certain issues — "the orthopedic and cigarette smoke inhalation issues" — because of inadequate briefing.

Coppe now appeals to this court.[9]

---

[9] Coppe included in her excerpt of record before this court some of her recent medical records. She apparently filed another claim with the Board, alleging that neck pain and surgery she had in 2012 were compensable. The neck surgery is not an issue in this appeal.

## III. STANDARD OF REVIEW

In an appeal from the Workers' Compensation Appeals Commission, we review the Commission's decision rather than the Board's decision.[10] We apply our independent judgment to questions of law that do not involve agency expertise.[11] We independently review the Commission's conclusion that substantial evidence in the record supports the Board's findings, which "requires us to independently review the record and the Board's factual findings."[12] We interpret the pleadings of pro se litigants less stringently than those of lawyers.[13]

## IV. DISCUSSION

### A. The Board's Error In Applying The Presumption Analysis Was Harmless.

Coppe contends that the Board improperly applied the presumption analysis to her claim. The Board decided that Coppe did not have the benefit of the presumption of compensability because she filed her claim late, but the Board then performed an alternative analysis in which it found that if the presumption applied, the presumption had attached, and the Bleichers had rebutted it. The Commission decided the issue was moot because of the Board's alternative analysis.

Alaska Statute 23.30.100(a) requires an employee to report her work-related injury to the Board and to the employer within 30 days of the injury. If an

---

[10] *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

[11] *Id.*

[12] *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

[13] *Id.* at 1011 (citing *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005)).

employee does not give the required notice, her claim may be barred.[14] Alaska Statute 23.30.100(d) sets out "three enumerated circumstances" in which late filing is excused.[15] Alaska Statute 23.30.100(d)(1) excuses late notice if the employer had knowledge of the injury and was not prejudiced by the failure to give notice. In Coppe's case, the Board decided that her claim was filed late, but it found that the Bleichers had notice of the injury. The Board then determined, relying on AS 23.30.120, that although it would consider Coppe's late claim, the presumption did not apply. The Commission interpreted the Board's decision as relying on subsection (d)(1) because the Board found that the Bleichers had actual notice of the sick building syndrome complaints. The Commission observed that the Bleichers had not challenged this part of the decision on appeal and that substantial evidence supported this part of the Board's decision. The Commission decided that any issue related to the Board's decision not to apply the presumption was moot because of the Board's alternative analysis.

*McGahuey v. Whitestone Logging, Inc.*[16] presented a similar issue. In *McGahuey* the claimant filed a report of injury more than a year after the date of injury.[17] The Commission and Board both decided the notice was not timely but did not analyze when the time period for giving written notice began.[18] We decided that both the Commission and the Board erred in failing to identify the date on which the 30-day period began to run, but that the error was harmless because the Board had performed

---

[14]     *McGahuey v. Whitestone Logging, Inc.*, 262 P.3d 613, 619 (Alaska 2011) (citing AS 23.30.100(d)).

[15]     *Alaska State Hous. Auth. v. Sullivan*, 518 P.2d 759, 761 (Alaska 1974).

[16]     *McGahuey*, 262 P.3d at 613.

[17]     *Id.* at 615.

[18]     *Id.* at 619.

an alternative analysis in which it analyzed the compensability of the claim.[19] We concluded that the Board's alternative analysis was correct.[20]

Coppe's case is analogous: We conclude that the Board erred but that the error was harmless. The Commission's determination that the Board applied AS 23.30.100(d)(1) is unchallenged on appeal, and the Commission correctly decided that substantial evidence in the record supports the Board's finding that the Bleichers had notice of Coppe's claim that the building was causing her respiratory complaints. The Board erred in deciding that the presumption analysis did not apply because AS 23.30.120(b) only deprives a claimant of the presumption of compensability "[i]f delay in giving notice is excused by the board under AS 23.30.100(d)(2)." If the delay is excused under AS 23.30.100(d)(1), the presumption applies.

The Board's error in failing to apply the presumption analysis was harmless, however, because it provided an alternative analysis in which it hypothetically, but correctly, applied the presumption analysis.[21] It decided that the presumption of compensability would have attached through the combined testimony of Coppe, her husband, and Dr. Pizzadili, and that the Bleichers would have rebutted it through the

---

[19]     *Id.* at 619-20.

[20]     *Id.* at 620-22.

[21]     The issue was not moot, as the Commission said, because Coppe's eligibility for benefits was still a live controversy. *See Williams v. Williams*, 252 P.3d 998, 1007 (Alaska 2011) ("A claim is moot if it has lost its character as a present, live controversy . . . ." (quoting *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 535 (Alaska 2005)) (internal quotation marks omitted)). Instead, it was harmless error. *See RLR v. State*, 487 P.2d 27, 45 (Alaska 1971) (distinguishing between mootness and harmless error).

testimony of their medical experts. The Board's alternative approach of attaching the presumption was correct as a matter of law.[22]

B.      The Board Applied The Correct Legal Standard To Coppe's Claim.

Coppe asserts that the Board incorrectly applied the post-2005 causation standard to her claim rather than the pre-2005 standard.[23] Her argument is based on the Board's statements that her work environment was not "the source" of her disability. The Commission did not discuss this issue, and it is unclear whether Coppe raised it before the Commission.

Assuming that Coppe preserved this issue for appeal, we conclude that the Board applied the correct legal test to her claim. Although the Board did not use the words "a substantial factor" in its concluding sentence, it used these words in the narrative related to the presumption analysis. The Board noted that if the presumption analysis applied, Coppe had provided enough evidence that "her place of employment [was] a substantial factor in her current disability and need for medical treatment" to attach the presumption. The Board also determined that the Bleichers had to "overcome the presumption with substantial evidence [that her place of employment was] not a substantial factor." It further stated that the EIME physicians "ruled out employment as a substantial factor." From these statements, we conclude that the Board correctly applied "a substantial factor" as the legal test rather than "the substantial cause."

---

[22]     This court has reviewed the question whether the presumption should attach as a matter of law. *See, e.g.*, *DeYonge v. NANA/Marriott*, 1 P.3d 90, 95 (Alaska 2000).

[23]     The legislature changed the standard for compensability from "a substantial factor" to "the substantial cause" in 2005. *See Rivera v. Wal-Mart Stores, Inc.*, 247 P.3d 957, 959 n.2 (Alaska 2011) (citing *Pietro v. Unocal Corp.*, 233 P.3d 604, 616 n.31 (Alaska 2010)) (noting change in causation standard). Coppe's claim arose before the statutory amendments took effect.

**C.    The Commission Correctly Concluded That Substantial Evidence Supported The Board's Decision.**

The central issue in this appeal is whether the Commission erred in deciding that substantial evidence in the record supported the Board's decision. Coppe contends that the Board ignored or failed to evaluate substantial evidence to support her claim. The Bleichers respond that substantial evidence supports the conclusion that Coppe did not suffer a work-related injury.

We agree with the Commission that substantial evidence in the record supports the Board's decision. The Board found Dr. Burton, the EIME toxicologist, and Dr. Martin, the SIME toxicologist, to be credible witnesses. The Board's credibility determinations are binding on the Commission.[24] Both doctors concluded that Coppe did not suffer any work-related exposure to toxins that would cause her to suffer the disabling conditions she described. Because Coppe alleged that her debilitating conditions were related to toxins in her work environment, these physicians' opinions were substantial evidence supporting the Board's decision that she did not suffer a work-related injury. Moreover, we have held in many cases that when the Board is presented with two or more conflicting medical opinions, each of which constitutes substantial evidence, we will defer to the Board's weighing of the evidence.[25] Because the Board assigned Coppe's evidence less weight than the Bleichers' evidence, she did not meet her burden of proof at the last step of the presumption analysis.

Coppe contends that the Board did not discuss her medical evidence, but the Board in fact did summarize the testimony and reports of her doctors. The Board decided to give their opinions less weight in part because the doctors relied on Coppe's

---

[24]    AS 23.30.128(b).

[25]    *See, e.g.*, *Cowen v. Wal-Mart*, 93 P.3d 420, 426 (Alaska 2004) (quoting *Doyon Universal Servs. v. Allen*, 999 P.2d 764, 767-68 (Alaska 2000)).

representations that others were also sickened by the building environment. The Board had depositions of the three employees who responded to Coppe's earlier survey; all three employees testified that their symptoms arose from causes other than their work environment.

**D.    The Commission Did Not Err In Deciding That Coppe Waived Some Issues On Appeal Due To Inadequate Briefing.**

Coppe argues that the Commission and Board erred in failing to deal with her orthopedic complaints and her concerns about smoking in the office. The Board did not address them, and the Commission decided that she had waived these issues on appeal.

Because Coppe is pro se, her brief is subject to a more relaxed standard than a brief prepared by an attorney.[26] Coppe complains that the Commission did not tell her that her brief was inadequate. The Commission reviews briefs to determine whether they meet the technical requirements set out in its regulations, and it can reject a brief that does not meet its technical requirements.[27] The adequacy of briefing an issue is not a technical requirement covered by the regulation; rather, it is a legal judgment subject to independent review.[28] Thus the Commission had no legal duty to notify Coppe that she had inadequately briefed an issue.

The Commission did not err in deciding that Coppe waived due to inadequate briefing issues about second-hand smoke and her orthopedic complaints. In

---

[26]    *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1011 (Alaska 2009) (citing *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005)).

[27]    8 Alaska Administrative Code (AAC) 57.150 (2011).

[28]    *See Bluel v. State*, 153 P.3d 982, 986 n.5 (Alaska 2007) (citing *Wilkerson v. State, Dep't of Health & Soc. Servs.*, 933 P.2d 1018, 1021 (Alaska 1999)) (reviewing adequacy of briefing as question of law).

her brief before the Commission, she listed evidence that she thought the Board had ignored in making its decision, including her testimony that Dr. Michael Bleicher smoked in the office. Second-hand smoke was presented as an environmental toxin at the hearing; the Board addressed her environmental complaints, as did the Commission.[29] But as the Commission noted, Coppe's brief consisted principally of a summary of the evidence; only four pages had any legal argument, and those arguments were primarily directed at her toxic-exposure claim. Her argument about the orthopedic complaints lacked citation to authority or a legal theory to support it.[30] We therefore conclude that the Commission correctly decided that Coppe inadequately briefed these issues.

E.      **The Commission's Error In Deciding That A Document In The Record Was "Inadmissible" For Purposes Of The Appeal Was Harmless.**

Coppe argues that some documents, which the Commission required her to remove from her excerpt in the Commission appeal, should have been included in the record and that the Commission deprived her of the opportunity to "challenge missing records." The regulation she cites in support of her argument, 8 AAC 57.180(a)(4), permits a party in a Commission appeal to include in her excerpt of record any evidence that was excluded at the Board level when the appeal challenges the Board's ruling about admissibility. This regulation does not apply here because the Board did not make a ruling about the admissibility of the documents and Coppe did not challenge a Board

---

[29]     To the extent Coppe was attempting to link second-hand smoke to heart disease in her brief to the Commission, she did not make a claim for heart disease and did not present medical evidence about it at the hearing. The doctor's testimony that Coppe cited in her brief before the Commission did not in any way link her medical test results to heart disease, nor did it link heart disease and second-hand smoke. Her doctor was describing medical tests he ordered to investigate Coppe's complaints of joint pain.

[30]     *See Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1257 (Alaska 2007) (discussing waiver of inadequately briefed issues when litigant is pro se).

ruling about admissibility. Instead, Coppe contended that she had filed the documents with the Board but that the Board had misplaced them.[31] Coppe found documents from another claim in the record in her appeal and argues that this supports her contention that the Board misplaced documents she filed. We have reviewed the documents, which were included in her excerpt before this court, and see no prejudice to Coppe from their exclusion.

But the Commission also prohibited Coppe from discussing a document that *was* part of the record. The Commission noted that Coppe's initial report of injury about her environmental complaints, with case number 200324746, was in the record on appeal. The Commission nonetheless decided that it was "inadmissible" for purposes of the appeal and ordered Coppe not to refer to this document in her brief. The Commission did not cite any legal authority for its order, stating only that "no issues arising out of that case" were part of the appeal.

The Commission erred in deciding that a document in the record was "inadmissible" for purposes of the appeal, but the error was harmless in this case. One of the Commission's regulations states that the record on appeal consists of "the entire board file, including all original papers."[32] Because it is uncontested that the report of injury was part of the Board's record, the Commission had no basis for excluding it from the record on appeal. A report of injury could potentially be used to rebut a charge of recent fabrication[33] or simply to show that a report had in fact been filed.

---

[31] The documents in question are correspondence from the insurance company and a transcript of a recorded conversation from September 2005 between Coppe and an unnamed person about her claim.

[32] 8 AAC 57.110(a)(2).

[33] *Cf.* Alaska R. Evid. 801(d)(1)(B) (defining as not hearsay prior consistent
(continued...)

But the Commission's error was harmless. Coppe fails to show how her rights were affected by her inability to refer to this document; moreover, other documents discussed her respiratory symptoms and her allegations that these symptoms were work related. Because the exclusion of this report of injury did not substantially affect her rights, the Commission's error was harmless.[34]

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the Commission's decision.[35]

---

[33]    (...continued) statements that are offered to rebut charges of recent fabrication).

[34]    *See Hill v. Giani*, 296 P.3d 14, 22 n.23 (Alaska 2013) (stating that a court should disregard errors that "have no substantial effect on the rights of the parties or on the outcome of the case." (citing *Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 531 (Alaska 1987))).

[35]    Coppe's brief mentions a number of other issues that we do not address; they have been waived because they were inadequately briefed or not preserved for appeal. Some issues were never raised before the Board or the Commission and are waived for that reason. *Rude v. Cook Inlet Region, Inc.*, 294 P.3d 76, 101 (Alaska 2012) (quoting *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001)) (holding that an issue may not be raised for first time on appeal).